# EXHIBIT A

# STATE OF NORTH CAROLINA

__MECKLENBURG__ County

File No. 21cvs 6962

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| Name Of Plaintiff |
|---|
| HARRY JAMES LABAR |

| Address |
|---|
| |

| City, State, Zip |
|---|
| |

**CIVIL SUMMONS**
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

**VERSUS**

| Name Of Defendant(s) |
|---|
| Balkan Transport, LLC and Michael Towndrow |

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Balkan Transport, LLC | Michael Towndrow |
| c/o Registered Agent Sagib Rizvanoic | 472 Turner Street |
| 4110 Knoll Ridge Drive | Oxford, NY 13830-3273 |
| Cedar Falls, IA 50613 Via Cert Mail/RRR | Via NC DMV/Commissioner of Motor Veh |

**IMPORTANT!** You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE!** ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| H. Andrew Fink | 4-28-2021 | 4:00 ☐ AM ☒ PM |
| Fink & Hayes, PLLC | Signature | |
| 521 East Boulevard | | |
| Charlotte, NC 28203 | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time |
|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Signature | ☐ AM ☐ PM |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
|  |  |  |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
|  |  |  |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| --- | --- |
| | SUPERIOR COURT DIVISION |
| COUNTY OF MECKLENBURG | 21CVS 6962 |

| HARRY JAMES LABAR, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) COMPLAINT |
| | ) (Jury Trial Demanded) |
| BALKAN TRANSPORT, LLC and | ) |
| MICHAEL TOWNDROW, | ) |
| | ) |
| Defendants. | ) |
| | ) |

The Plaintiff, Harry James Labar, complaining of the Defendants, alleges as follows:

## PARTIES

1. The Plaintiff, Harry James Labar, is a citizen and resident of Mooresville, Iredell County, North Carolina.

2. Upon information and belief, the Defendant, Balkan Transport, LLC (Defendant Balkan), is a corporation organized and existing under the laws of the State of Iowa, and having its principal office and place of business at 4110 Knoll Ridge Drive, Cedar Falls, Iowa 50613. Defendant Balkan may be served with process through its Registered Agent, Sagib Rizvanovic, 4110 Knoll Ridge Drive, Cedar Falls, Iowa 50613.

3. Upon information and belief, the Defendant, Michael Towndrow (Defendant Towndrow), is a citizen and resident of Oxford, Chenango County, New York and he may be served with process at this address.

4. At all times relevant in this lawsuit, Defendant Towndrow was an employee of Defendant Balkan and was acting within the course and scope of his employment with Defendant Balkan.

## STATEMENT OF FACTS

5. On or about May 1, 2018 at approximately 7:37 a.m., the Plaintiff was the owner and operator of a 1996 Ford Mustang automobile, was operating said vehicle in a lawful and proper manner in full compliance with the laws of the State of North Carolina, and was travelling in a southerly direction along Interstate 77 in Charlotte, Mecklenburg County, North Carolina

6. Plaintiff was 42 years of age and in excellent health, with good eyesight and hearing.

7. Plaintiff owned and operated his own vehicle, a 1996 Ford Mustang with anti-lock brakes.

8. The weather conditions on May 1, 2018 were sunny, clear and no wind.

9. Upon information and belief, Defendant Towndrow received training and instruction in order to qualify for a Commercial Driver's License ("CDL"), which is required to operate a Commercial Motor Vehicle ("CMV").

10. As the operator of a tractor-trailer being used in interstate commerce, Defendant Towndrow was required to comply with all applicable Federal Motor Carrier Safety Regulations ("FMCSR's") promulgated by the United States Department of Transportation, set forth the various sections of Title 49 of the Code of Federal Regulations, and further to comply with all applicable State regulations that are stricter than Federal requirements, in those states in which Defendant Towndrow operated a tractor-trailer.

11. In qualifying for his CDL, Defendant Towndrow was required to pass a written test on driving rules and regulations, including FMCSR, Defendant Towndrow was further required to demonstrate that he could safely operate a commercial motor vehicle by taking a road test.

12. A CDL requires advanced levels of knowledge and operating skill, in comparison to the standards required to obtain a license to operate passenger vehicles.

13. 49 CFR §392.22 mandates in relevant part that whenever a commercial motor vehicle is stopped under the shoulder of a highway for any cause other than necessary traffic stops, the driver of the stopped commercial motor vehicle shall immediately activate the vehicular hazard warning flashers and continue the flashing until the driver places on the road or shoulder the warning devices required by the regulation.

14. 49 CFR §392.22 further mandates in relevant part that whenever a commercial motor vehicle is stopped upon the shoulder of a highway for any cause other than necessary traffic stops, the driver shall, as soon as possible, but in any event within 10 minutes, place the warning devices required by §393.95 in the manner prescribed, which is as follows: (i) One on the traffic side of and 4 places (approximately 3 meters or 10 feet) from the stopped commercial motor vehicle in the direction of approaching traffic; (ii) One at 40 paces (approximately 30 meters or 100 feet) from the stopped commercial motor vehicle in the center of the shoulder occupied by the commercial motor vehicle and in the direction of approaching traffic; and (iii) One at 40 paces (approximately 30 meters or 100 fee) from the stopped commercial motor vehicle in the center of the shoulder occupied by the commercial motor vehicle and in the direction away from approaching traffic.

15. 49 CFR §392.22 further provides that during the period lighted lamps are not required, three bidirectional reflective triangles, or three lighted fuses or liquid-burning flares shall be placed as specified in §392.22 (b)(1) within a time of 10 minutes.

16. The Plaintiff belonged to the class of persons that the Federal Motor Carrier Safety Regulations are intended to protect. To wit, that class of persons consists of and includes

the motoring public which shares the highways and roadways of the Units States with vehicles operated by the motor carrier industry.

17. Specifically 49 CFR §392.22, the regulation mandating that commercial motor vehicles which are stopped on the traveled portion or the shoulder of a highway for any cause other than necessary traffic stops must immediately activate the vehicular hazard warning signal flashers and then within 10 minutes place specific warning devices, such as bidirectional reflective triangles, in the prescribed manner, is intended to warn motorists that the commercial motor vehicle is in fact stopped and not moving, so as to prevent likely fatal collisions with stopped commercial motor vehicles due to the possible perception that such commercial motor vehicles are moving in a lane of travel.

18. The U.S. Department of Transportation's Federal Highway Administration, various state departments of transportation, and the trucking industry itself have recognized that a commercial motor vehicle stopped on the travelled portion or the shoulder of a highway is a serious hazard to passing vehicles and that warning devices must be placed to notify passing motorists that the commercial motor vehicle is standing still.

19. Likewise, the State of North Carolina prohibits the parking or leaving of any vehicle on the paved or main-traveled portion of any highway unless the vehicle is disabled and it is impossible to move the vehicle. N.C. General Statute §20-16(a) states: "No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled portion of any highway or highway bridge outside any municipal corporate limits unless the vehicle is disabled to such an extent that it is impossible to avoid stopping and temporarily leaving the vehicle upon the paved or main traveled portion of the highway or highway bridge."

20. The State of North Carolina also requires the appropriate warning devices be placed when a tractor-trailer is parked disabled on any part of a roadway within North Carolina. "The operator of any truck, truck trailer, trailer or semitrailer which is disabled upon any portion of any highway shall display warning devices of a type and in a manner as required under the rules and regulations of the United States Department of Transportation as adopted by the Division of Motor Vehicles. Such warning devices shall be displayed as long as the vehicle is disabled." N.C. General Statute §20-161(c).

21. N.C. General Statute §20-140.3 further declares it unlawful, on those sections of highways, which are or become part of the National System of Interstate and Defense Highways and other controlled-access highways, for any person "To stop, park, or leave standing any vehicles, whether attended or unattended, on any part or any portion of the right-of-way of said highways, except in case of an emergency or as directed by a peach officer, or at designated parking areas."

22. Interstate 77 is such a controlled-access highway to which N.C. General Statute §20-140.3 applies.

23. Moreover, modern highway design principles also recognize that moving vehicles at times leave the traveled portion of a roadway, and hence there should be a clear recovery zone from of fixed objects that would be harmful to a motorist attempting to recover their vehicle to the main traveled portion of the roadway.

24. Upon information and belief, on May 1, 2018, at some time prior to 7:37 a.m., Defendant Towndrow pulled his tractor trailer rig over, stopped and parked on the shoulder of southbound Interstate 77 at the off ramp to Interstate 485. Upon information and belief, Defendant Towndrow had made a driver change while parked on the shoulder of Interstate 77.

Upon information and belief, Defendant Towndrow did not activate his 4-way emergency flashers and did not, within 10 minutes of stopping, place bidirectional reflective triangles on the road shoulder behind and ahead of his rig as mandated by the FMCSR to give warning to approaching motorists that he was stopped.

25. When Defendant Towndrow stopped and parked his tractor-trailer rig on May 1, 2018 prior to 7:37 a.m., he had not been directed to park there by a law enforcement officer and his tractor trailer was not disabled.

26. Defendant Towndrow's tractor trailer rig was parked within 2 feet of the lane of travel of southbound Interstate 77 in what is considered a "clear zone" by the American Association of State Highway and Transportation Officials and the North Carolina Department of Transportation. The purpose of the clear zone is to provide a safety to the motoring public to allow for an area of recovery outside of the marked lanes of travel.

27. Defendant Towndrow was parked within 2 feet of a lane of travel with a posted speed limit of 65 mph.

28. Defendant Towndrow was parked on an area with an extended curvature of the roadway

29. Just beyond where Defendant Towndrow was parked and the point of impact, the 2 lanes were designated to merge to a single lane with arrows directing traffic to merge from left to right.

30. At approximately 7:37 a.m. on May 1, 2018, the Plaintiff was travelling south on Interstate 77, approaching the off ramp to Interstate 485, and as he approached sudden stopped traffic, he attempted to slow his vehicle and drove to the right shoulder of the roadway in an effort to avoid colliding with the vehicles in front of him.

31. Plaintiff's vehicle violently crashed into the rear of the parked tractor trailer rig driven by Defendant Towndrow and owned by the Defendant Balkan.

## FIRST CLAIM FOR RELIEF:

## DEFENDANTS' NEGLIGENCE

32. Paragraphs 1 through 31 are incorporated herein by reference.

33. As the operator of a commercial motor vehicle being used in interstate commerce, Defendant Towndrow, who holds a Commercial Driver's License issued under the authority of the FMCSR, owed a duty to comply with federal and state laws and regulations directed to the safe operation of his motor vehicle for the protection and benefit of the motoring public.

34. The duty owed by Defendant Towndrow, as the operator of a commercial motor vehicle being used in interstate commerce, was owed to that class of persons who use and share public roads and highways with such commercial motor vehicle operators.

35. Plaintiff belonged to the class of persons that federal and state laws and regulations directed to the safe operation of motor vehicles, and specifically commercial motor vehicles, are intended to protect.

36. Defendant Towndrow breached the duties owed to comply with federal and state laws and regulations directed to the safe operation of his motor vehicle for the protection and benefit of the motoring public, including Plaintiff, in one or more of the following ways:

    a. Stopping and parking his tractor trailer n the paved shoulder of Interstate 77 when there was no emergency, mechanical problem, and when he had not been directed to park there by a law enforcement officer in violation of N.C. General Statute §20-140.3 and §20-161, the violation of which are negligence per se.

b. Failing to activate immediately his 4-way emergency flashers after he stopped his rig on Interstate 77, and to keep them on and flashing until he placed the required warning devices, in violation of 49 CFR §390.3, §392.22, and N.C. General Statute §20-161(c), the violations of which are negligence per se.

c. Failing to place warning devices in the form of three bidirectional reflective triangles alongside his rig to warn motorists that he was stopped and not moving, in violation of 49 CFR §390.3, §392.22, and N.C. General Statute §20-161(c), the violations of which are negligence per se.

37. As a trained professional truck driver holding a Commercial Driver's License, Defendant Towndrow knew or should have known that the consequences of his acts and omissions, in violation of state and federal highway safety laws and regulations, including the FMCSR, could result in serious injury or death to himself or others.

38. The aforementioned negligent acts and omissions of Defendant Towndrow were the legal cause of injury to Plaintiff, in that the referenced statutes and regulations are intended to prevent the kind of injury suffered by Plaintiff, and Plaintiff was within the class of persons that the statutes and regulations are designed to protect.

39. The aforementioned negligent acts and omissions of Defendant Towndrow were the proximate cause of injury to the Plaintiff, in that, but for Defendant Towndrow having illegally parked his tractor trailer where he did, Plaintiff would have merely driven through the clear recovery zone as designed into the highway and either come to stop or recovered and returned to the paved road surface.

40. As a direct result of Defendant Towndrow's negligence, Plaintiff collided with Defendant Towndrow's tractor trailer and was severely injured.

41. As a direct and legal result of the foregoing, Defendant Towndrow is liable to the Plaintiff in negligence for his injuries and resulting damages.

42. Defendant Towndrow's conduct in the operation of his commercial motor vehicle on May 1, 2018, was done in conscious and intentional disregard of and indifference to the rights and safety of others, thus constituting wanton negligence.

43. As a direct result of Defendant Towndrow's wanton negligence, Plaintiff collided with Defendant Towndrow's parked tractor trailer and was severely injured.

44. As a direct and legal result of the foregoing, Defendant Towndrow is liable to Plaintiff for his wanton negligence for the injury to Plaintiff and Plaintiff's resulting damages.

45. Defendant Balkan, by and through their officers, directors or managers, had knowledge of Defendant Towndrow's habits in the manner in which he operated a commercial motor vehicle on their behalf and participated and/or condoned such conduct.

46. Defendant Balkan is liable for the negligent acts and omissions of their agent and employee, Defendant Towndrow, under the doctrine of respondeat superior, for actual and punitive damages.

## SECOND CLAIM FOR RELIEF:

## DEFENDANTS' GROSS NEGLIGENCE

47. Paragraphs 1 through 46 are incorporated herein by reference.

48. Defendant Towndrow's acts and conduct in the operation of his commercial motor vehicle on May 1, 2018, were done purposely and with knowledge that such acts and conduct were in breach of duties owed to others, i.e. they were reflective of and constitute a conscious disregard of the safety of others, thus constituting gross negligence.

49. As a direct result of Defendant Towndrow's gross negligence, Plaintiff collided with Defendant Towndrow's parked tractor trailer and was seriously injured.

49. As a direct and legal result of the foregoing, Defendant Towndrow is liable to the Plaintiff for his gross negligence for the injuries to Plaintiff, and for Plaintiff's resulting damages.

50. Defendant Balkan, by and through their officers, directors or managers, had knowledge of Defendant Towndrow's habits in the manner in which he operated a commercial motor vehicle on their behalf and participated and/or condoned such conduct.

51. Defendant Balkan is liable for the wantonly negligent acts and omissions of their agent and employee, Defendant Towndrow, under the doctrine of respondeat superior, for actual and punitive damages.

## THIRD CLAIM FOR RELIEF:

## DEENDANT BALKAN'S FAILURE TO TRAIN AND FAILURE TO SUPERVISE

52. Paragraphs 1 through 51 are incorporated herein by reference.

53. 49 CFR §390.3(e)(1) of the FMCSR states: "Every employer shall be knowledgeable of and comply with all regulations contained in this subchapter which are applicable to that motor carrier's operations."

54. 49 CFR §390.3(e)(2) of the FMCSR states: "Every driver and every employee shall be instructed regarding, and shall comply with, all applicable regulations contained in this subchapter."

55. 49 CFR §390.11 of the FMCSR states: "Whenever in part 325 of subchapter A or in this subchapter a duty is prescribed for a driver or a prohibition is imposed upon the driver, it

shall be the duty of the motor carrier to require observance of such duty or prohibition. If the motor carrier is a driver, the driver shall likewise be bound."

56. It is the non-delegable duty of a motor carrier to train and supervise its drivers in their employ.

57. It was reasonably foreseeable to Defendant Balkan that, if they did not properly train and supervise their employee drivers, including Defendant Towndrow, these drivers might operate a commercial motor vehicle in violation of FMCSR, or other applicable federal and state laws and regulations.

58. In fact, Defendant Towndrow did violate safety provisions of the FMCS on May 1, 2018, with the proximate result that Plaintiff was severely injured when his car collided with Defendant Towndrow's illegally parked tractor trailer rig.

59. But for the Defendant Balkan's failure to train and supervise Defendant Towndrow, he would not have illegally parked the Balkan Transport tractor trailer rig on Interstate 77 on May 1, 2018 and Plaintiff would not have been seriously injured in the collision with that rig.

60. As a direct and legal result of the foregoing, Defendant Balkan is liable to the Plaintiff in negligence for the injury of Plaintiff, and for Plaintiff's resulting damages.

61. As a result of the forgoing, the Plaintiff has become obligated for the payment of large sums of money for doctor bills and other medical attention and treatment and Plaintiff is advised and believes that he will require continued medical treatment in the future.

62. The Plaintiff was gainfully employed at the time of the collision referred to herein, and as a result of his injuries, he was unable to work for a period of time and unable to fulfill his employment contract, resulting in a large loss of earnings and earning capacity.

63. As a direct and proximate result of the foregoing negligence of the Defendants, the Plaintiff suffered severe injuries to his person requiring medical attention, loss of earnings and earning capacity, and injuries which Plaintiff alleges to be permanent in nature.

64. As a direct and proximate result of the negligence of the Defendants, the Plaintiff has suffered injuries and damages in excess of Twenty-Five Thousand Dollars ($25,000.00).

65. As a direct and proximate result of the negligence of the Defendants, the Plaintiff sustained property damage, loss of use and reasonable rental expenses in the amount of Seven Thousand Five Hundred Dollars ($7,500.00).

NOW THEREFORE, the Plaintiff prays the Court as follows:

1. Plaintiff have and recover judgment of the Defendants, jointly and severally, a sum in excess of Twenty-Five Thousand Dollars ($25,000.00) for injuries and damages to his person;

2. Plaintiff have and recovery judgment of the Defendants, jointly and severally, all damages allowed under the law of North Carolina, including medical expenses, lost earnings, loss of earning capacity, pain and suffering and permanent disability;

3. Plaintiff have and recover of the Defendants, jointly and severally, punitive damages in an amount consistent with the allegations contained in this Complaint;

4. Plaintiff have and recover of the Defendants, jointly and severally, for his property damage claim in the amount of Seven Thousand Five Hundred Dollars ($7,500.00);

5. Plaintiff have and recover of the Defendants, jointly and severally, for the failure to train and failure to supervise Defendant Towndrow;

6. Plaintiff have and recover of the Defendants, jointly and severally, for their negligence and gross negligence acts against Plaintiff.

7. The costs of this action be taxed against Defendants;

8. Reasonable attorney's fees as allowed by law;

9. All issues raised herein be tried by a jury; and

10. For such other and further relief as the Court may deem just and proper.

This ___28___ day of ___April___, 2021.

_____
H. ANDREW FINK
Attorney for Plaintiff
NC Bar #: 16625
FINK & HAYES, PLLC
521 East Boulevard
Charlotte, North Carolina 28203
Office: 704-714-6500
Facsimile: 704-714-6501
Email: Andy@finkhayeslaw.com